IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | INFORMATION |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CASE NO. 1:20 CR 205 |
| JEFFREY BOHLAND, | ) ) | Title 18, United States Code, Section 371 |
| Defendant. | ) ) | |

JUDGE NUGENT

## GENERAL ALLEGATIONS

At all times relevant to this Information:

1. Defendant JEFFREY BOHLAND was a United States citizen and a resident of the Northern District of Ohio, Eastern Division.

2. B.H. was a United States citizen and a resident of Nevada.

3. Bookmaking involved an organization or person, known as a "bookmaker" or "bookie," who took bets on sporting events at agreed upon odds.

4. Betting odds were skewed to attempt to ensure that the bookmaker made a profit.

5. Bookmakers attempted to minimize risk by obtaining an equal amount of money wagered on each side of the wagering event by adjusting the odds in their favor or by having a point spread.

6. By adjusting the odds or using a point spread, the bookmaker aimed to achieve a "balanced book."

7. Bookmakers typically collected a percentage of each bet from each losing gambler as a commission known as the "vig."

8. When a large bet came in, a bookmaker could also try to "lay off" the risk by buying bets on the other side from other bookmakers to minimize risk. Bookmakers also could sell the large wager to another bookmaker.

9. Some bookmakers also split their winnings and losses with another bookmaker to minimize risk.

10. The object of bookmaking was to have equal bets on both sides of the game and the profit was in the "vig."

11. BOHLAND operated as a bookmaker in the Northern District of Ohio, Eastern Division, and elsewhere.

12. The operation of a gambling and sports betting website business was a violation of the laws of the State of Ohio, to wit: O.R.C. 2915.02(A)(1) and (A)(3).

13. The operation of a gambling and sports betting website business was a violation of the laws of the State of Florida, to wit: Title XLVI, Statute 849.14.

14. BOHLAND, B.H., and others in the Northern District of Ohio, Eastern Division, and elsewhere utilized offshore sports betting websites, to include www.playwc.com (hereinafter "PWC"), to track and control the bets of their gambling clients. Specifically, BOHLAND and B.H. obtained clients and created accounts for them on PWC. BOHLAND and B.H. would then provide their clients with the web address, a username, and a password for access to PWC. Specifically, PWC allowed gambling clients to make bets via the website on sporting events. PWC also tracked clients' wins and losses and maintained a dollar balance of the bookmakers' client accounts.

15. BOHLAND and B.H. had direct access to the PWC website.

16. BOHLAND was partnered with B.H. and split a percentage of their clients' gambling wins and losses.

17. BOHLAND met in person with their clients in the Northern District of Ohio, Eastern Division to pay out winnings and to collect from clients who lost.

18. BOHLAND paid cash to clients who won and collected cash from clients who lost via sports bets that had been placed with BOHLAND and B.H. via the PWC website.

19. After BOHLAND settled the balances in person with their clients, he informed B.H., whom then cleared the client account balances on the PWC website.

20. B.H. then instructed BOHLAND how much money to keep for himself and to pay others as part of their agreed upon percentages.

## COUNT 1
(Conspiracy to Transmit Wagering Information, 18 U.S.C. § 371)

The United States Attorney charges:

21. The allegations contained in paragraphs 1 – 20 are re-alleged and incorporated by reference in this count, as though fully restated herein.

22. From on or about February 4, 2018 and continuing until on or about February 14, 2019, in the Northern District of Ohio, Eastern Division, and elsewhere, BOHLAND and B.H., did voluntarily and knowingly conspire, combine, confederate, and agree together and with each other and with others, both known and unknown to the Grand Jury, to engage in the business of betting and wagering by knowingly using a wire communication facility, for the transmission in interstate or foreign commerce of bets and wagers, or information assisting in the placing of bets and wagers, or for transmission of a wire communication which entitled the recipient to receive money and credit as a result of bets and wagers on a sporting event and contest, in violation of Title 18, United States Code, Section 1084(a).

## OBJECT OF THE CONSPIRACY

23. The object of the conspiracy was to enrich BOHLAND, B.H. and others by transmitting wagering information to assist or facilitate with the placing of bets or wagers by clients to obtain a profit from gambling losses.

## MANNER AND MEANS OF THE CONSPIRACY

24. It was part of the conspiracy that:

    a. BOHLAND and B.H. operated as bookmakers by providing their clients access to offshore gambling websites.

    b. The websites allowed clients of BOHLAND and B.H. to bet on sporting events, track wins and losses, and the monies due to BOHLAND and B.H.

    c. These figures allowed BOHLAND and B.H. to pay out winnings and collect losses in person.

    d. After BOHLAND settled the balances in person with their clients, he informed B.H., whom then cleared the client account balances on the website.

    e. B.H. then instructed BOHLAND how much money to keep for himself and to pay others as part of their arrangement.

## OVERT ACTS

25. In furtherance of the conspiracy, and to effect and conceal the existence of the conspiracy, the following overt acts were committed by the below-listed persons, in the Northern District of Ohio, Eastern Division, and elsewhere:

26. On or about January 5, 2019, BOHLAND exchanged numerous text messages with B.H., whom was located in Costa Rica, which text messages discussed the tracking and

4

management of gambling client account balances, sports wagers, and the operation of their gambling business. Specifically, BOHLAND and B.H. exchanged text messages regarding settling the account balances of several clients, to include a client whom had placed a bet on the South Carolina versus University of Florida NCAA men's basketball game that was played on January 5, 2019.

27. On or about January 14, 2019, BOHLAND met with J.B., a gambling client, in person and paid him approximately $8,230.00 to settle the balance owed to J.B. for winning wagers that had been placed on sports via the PWC website.

28. On or about February 13, 2019, BOHLAND exchanged numerous text messages with B.H., whom was located in Nevada, which text messages discussed the tracking and management of gambling client accounts and balances.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE

The United States Attorney further charges:

The allegations of Count 1 are hereby re-alleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c). As a result of the foregoing offense, defendant JEFFREY BOHLAND shall forfeit to the United States all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offense; including, but not limited to, the following:

a.) $36,559.00 U.S. Currency recovered at defendant JEFFREY BOHLAND's Cleveland, Ohio, residence on February 14, 2019, pursuant to the execution of a federal search warrant.

    b.)    $8,230.00 U.S. Currency paid by defendant JEFFREY BOHLAND to a gambling client on or about January 14, 2019, to settle the balance owed to the gambling client for winning wagers.

JUSTIN E. HERDMAN
United States Attorney

By: *[signature]*
Bridget M. Brennan
First Assistant United States Attorney